JAMES H. LIVINGSTON et al., Appellants, v. LENOX COLLEGE et al., Appellees.

**WILLS: Construction—Conditions as to "Raising" Money.** A condition in a devise to a college to the effect that the devise shall vest only when the college has *"raised"* a stated amount of money to supplement the devise, is fully met by obtaining bona-fide subscriptions to the required amount from financially responsible subscribers.

**WILLS: Construction—Reversion Because of Failure to Execute Charity.** Heirs of a testator may not assert a reversion to themselves of a fully vested devise to an educational charity, on the ground that the charity is not being carried out, when testator has not specified any conditions under which there should be such reversion.

*Appeal from Delaware District Court.*—H. B. BOIES, Judge.

NOVEMBER 22, 1921.

THE nature and effect of this controversy are sufficiently disclosed in the following opinion. The relief sought by the plaintiffs having been denied by the district court, they have appealed.—*Affirmed.*

*Carr & Carr* and *Edwards, Longley, Ransier & Harris,* for appellants.

*Yoran & Yoran* and *Trewin, Simmons & Trewin,* for appellees.

WEAVER, J.—Archibald Livingston, unmarried and without lineal descendants, died testate, March 19, 1909. His will and codicil thereto disposed of an estate of the value of about $30,000,

1. WILLS: construction: conditions as to "raising" money.

as follows: First: To certain named trustees, to be used for the erection and maintenance of a hospital in the city of Monticello, on condition that said city, within two years after the death of the testator, shall raise an additional sum of $50,000 in cash, to aid in the promotion of such charity. If, however, the city of Monticello fails to meet this condition, the testator in such event gives, devises, and bequeaths the estate to Lenox College, at Hopkinton, Iowa, "for the purpose of an experimental station in farming and domestic science in South Fork Township, Delaware County, Iowa, to be known as the Archibald Livingston Home and this gift is upon the condition that said Lenox College shall, within one year after the expiration of the time or the refusal of Monticello to raise funds as required to aid in the erection and maintenance of a hospital, raise $25,000 to equip said Archibald Livingston Home and to be added to the gift herein given and to be known as the Archibald Livingston Home and made an experimental home for college students. If the conditions herein are not accepted by Monticello or Lenox College of Hopkinton, Iowa, then my said estate shall go to my legal heirs as the law gives, share and share alike."

This will having been filed for probate very soon after the testator's decease, the plaintiffs in the present action, or some of them, claiming to be his heirs at law, appeared to contest its admission to probate, alleging the testator's want of testamentary capacity, and asserting that the will and codicils had been executed under undue influence. The litigation thus beginning in 1909 ran its weary way through the courts until 1913, when the will and codicils were admitted to probate. An appeal therefrom was taken by the contestants to this court, and the judg-

ment of the trial court sustaining the will was finally affirmed, and rehearing denied in January, 1917. In June, 1918, this action was begun by the heirs who had contested the will. The petition recites the facts hereinbefore mentioned, and alleges the failure of the city of Monticello to accept the devise in its favor. It further alleges that Lenox College did not comply, and has not complied, with the condition precedent to its right to receive said devise, in that it did not, within the time prescribed by the will or at any time since, raise the required sum of $25,000, to equip the proposed Archibald Livingston Home, and has failed to perform the condition subsequent attached to said devise, in that, although more than five years have passed, the college has taken no steps toward the erection and maintenance of said home, as contemplated by the testator; that the college is insolvent, having no available funds with which to perform such condition; and that there is no reasonable prospect that it will ever be able to comply therewith. The plaintiffs therefore pray for equitable relief, declaring that they, as heirs at law of the testator, are entitled to recover said estate, under the terms of the will; that neither the city of Monticello nor Lenox College ever performed the conditions attached to the devise, and never became vested with any right, title, or interest in the estate. Because thereof, the court is asked to exercise its equitable powers to protect the estate from waste or diminution in the defendants' hands.

Answering the petition, Lenox College and the executor of the will admit the failure of the city of Monticello to accept the devise in its favor, but specifically deny that the college has failed to perform the condition of the devise made for its benefit, and allege that it has complied therewith, and has formally accepted the gift. They aver that the devise to the college was an absolute and completed gift of the entire estate, and not in trust, subject only to the conditions expressed in the will, which conditions have been complied with by raising the required amount of $25,000, and by filing in the probate proceedings its written acceptance of such devise, and agreeing to carry out its provisions. The answer pleads, in further bar of this action, that, in the proceedings contesting the will of the testator, and after the expiration of three years from his death, the con-

testants, now plaintiffs herein, filed pleadings in aid and support of such contest, alleging that Lenox College failed and neglected to accept the devise in its favor, and that by reason thereof it forfeited and lost all right and interest in the estate, and said devise for its benefit became void and of no effect. It is further alleged that the issue thus tendered was tried in that proceeding and adjudicated against the contention of the plaintiffs, and that such issue cannot be tried again in this action.

The trial court heard the evidence offered by the respective parties, and under date of November 5, 1919, entered a decree to the effect that Lenox College is the "sole legatee of the entire estate of Archibald Livingston, deceased;" that said "Lenox College has fully complied with the terms specified by the testator upon which the legacy to it was conditioned," and thereby became entitled to its benefits; and that said college is "adjudged and decreed to be fully and irrevocably vested with the title in fee to all the real estate of which the testator died seized, together with all right of property therein and of all personalty belonging to said estate, subject only to its proper administration." It was further adjudged that the plaintiffs have no right, title, or interest in the estate, and are therefore barred and estopped from having or making any claim thereto adverse to Lenox College.

I. The abstract of the evidence in the case is too voluminous to justify us in embodying any considerable part of it in this opinion. It tends fairly to show that, when informed of the devise, and that Monticello would not accept it, Lenox College began an organized effort to secure the offered benefits of the Livingston will. To that end, its officers and faculty inaugurated what is called in the record the "Livingston Drive," to raise a fund sufficient, not only to meet the conditions of the Livingston devise, but for several other purposes connected with the support of the college, and for improvement of the college buildings. The time for raising the fund to meet the condition named in the will was to expire on March 19, 1912. The campaign to secure the fund closed on March 15, 1912; and on that date, the trustees of the college found that the pledges and subscriptions obtained, including the Livingston estate, of the value of $30,000, aggregated $105,830.92. This being determined, the

trustees adopted a resolution appropriating $25,000 of said fund to meet the condition of the gift, and notified the executor of the will of the acceptance of the devise.

The foregoing statement is sufficient to bring us to the question which counsel for appellant say "is the decisive issue in this case." Was the sum of $25,000 in fact "raised," within the true meaning of the will? This the appellants answer in the negative.

Before taking up this discussion, it is well to explain in some detail the method or plan pursued. Subscriptions were sought from friends and liberally disposed persons, payable on condition that an aggregate of such pledges to the amount of $75,000 should be obtained by March 18, 1912. In a large part, these subscriptions were made in the form of promissory notes, payable to Lenox College at varying dates in the future, and most of them drawing interest. Each note was, in terms, made payable on condition "that $75,000 are subscribed to Lenox College, and the conditions of the Archibald Livingston legacy (estimated at $30,000) are met by March 18, 1912." Much the greater proportion of the larger pledges were time subscriptions, and at no time within the prescribed period for complying with the conditions of the will did the college or its trustees have on hand in money an amount of $25,000 applicable to that purpose. It satisfactorily appears, however, that, before March 19, 1912, the college did receive good subscriptions of the character above indicated very considerably in excess of $25,000, and that the college trustees, by formal action, appropriated therefrom the amount required to meet the condition imposed upon the gift.

But, say counsel, this testamentary condition calls for the raising of $25,000, and this call for "dollars" cannot be satisfied by subscriptions or pledges, no matter how good, or by obtaining the required sum in the form of mere promises or choses in action. But this proposition, we think, is entirely too sweeping. The testator's language is to be construed according to its usual or popular signification, taking into consideration the subject-matter of the devise which he was then framing. The man who is sent out to "raise" $1,000 or any other given sum by popular subscription, in support of a named charity, or for

the erection of a church, or the relief or endowment of a college, and comes back with his subscription paper signed by a list of responsible men and women, pledging themselves to pay the desired amount within a reasonable limit of time, has accomplished the work committed to him as fully and completely as if he had received the subscribers' bank checks. He has "raised the money." It is a matter of familiar knowledge that gifts to some public charity are frequently offered on condition that additional money be raised, to increase the proposed benefits or to make the original gift more effective for its designed purpose. It is equally well known that, as a rule, these conditions are met by popular subscriptions payable in the future, and such raising of the money is universally taken and considered as a compliance with the prescribed condition. It is, of course, possible for a testator or other donor to make his gift conditional upon the actual receipt and possession by the donee of the additional sum; but unless that intention is expressed in words more restrictive than are used in the Livingston will, the condition attached to such gift should not be thus narrowly interpreted. It is worth while at this point to note the exact terms used by the testator. In the devise to the Monticello trustees, in the codicil to the will, he stated the condition of such gift to be that, "within two years after my death the town or city of Monticello, Iowa, shall raise *in cash* the sum of $50,000," etc.; but in the same paragraph of the codicil, where he makes the alternative devise to Lenox College, he states the condition of the gift to be that "said Lenox College shall within one year after the expiration of the time or the refusal of Monticello * * * raise $25,000 to equip," etc. The words "*in cash*," which appear in connection with the gift to Monticello, are not used with reference to the gift to the college. This variation in the terms of the two conditions is not without some signification of the testator's understanding that the fund would have to be raised in the usual and familiar way, to which we have adverted. Judicial precedents upon the proposition are few, but not entirely wanting. Perhaps as nearly in point as any is the case of *New London L. & S. Inst. v. Prescott*, 40 N. H. 330, where a subscription was conditional upon the "raising" of an additional amount; and it was held that, unless the

amount in question *is in good faith subscribed,* the subscriber is released. Again, it must be remembered that the word "dollar" does not always necessarily mean coin of the realm, or legal tender currency. It is often used as a measure or estimate of the value of lands or of personalty, or of bills or notes or other property. A statement that a man is possessed of $25,000 is true, in the generally accepted sense of the word, even though he has not in hand a dollar in coin or currency, if he is able to produce that value in certificates of deposit or bonds or notes or other securities or property fairly representing that amount. It is in this sense, we think, that the word is used in the devise to the college; and if the college did, within the time limited, secure bona-fide subscriptions, pledges, and gifts to the amount of $25,000 or more, with which to meet the condition imposed by the will, that condition was thereby satisfied, and the right of the college to receive the benefits of the devise became fully vested. That the required sum was, in this sense, raised for the specified purpose, is not open to reasonable doubt. Among the subscriptions and contributions to the "Livingston Drive" were one of $10,000 from an organization of the Presbyterian Church; one of property from a Mrs. Doolittle, of $7,500; and another of $3,000 from Mrs. McCormick. These subscriptions were made before March 18, 1912, and collected soon after that date. There were also included promissory notes payable on demand, $9,298; other notes, maturing at various dates within five years, $18,644.19; other notes, payable at later dates, $2,474.36; and still others which were subject to certain stated contingencies. The bona-fide character of these subscriptions is not questioned; and for reasons which are already stated, the fact that the money thereon had not been paid within the three-year period after the death of the testator, is not a controlling circumstance against the trial court's finding.

It is objected, however, that, in several instances, the college granted scholarships in consideration of notes given in aid of the drive. If this be a good reason for refusing to count such subscriptions, there is still left a safe margin without them; but we see no good reason why they should be rejected.

The trial court, therefore, did not err in its conclusion that the sum needed to meet the condition attached to the devise

was "raised," within the meaning of the testator, as expressed in his will and codicil.

II. It is further contended for the appellants that, even if it be held that the additional sum of $25,000 was "raised" within the time limited for that purpose, the college has forfeited

2. WILLS: con-
struction:
reversion
because of
failure to
execute
charity.

or lost its right to the devise, because it has thus far failed to establish the Archibald Livingston Home, as intended and directed by the testator, and because the funds raised by the Livingston Drive have been, to a great extent, expended for other purposes.

Conceding, for the purposes of this case, that the college, having accepted and received the benefits of the devise in its favor, is in duty bound to apply the property and funds so acquired to the uses prescribed by the will, we have first to inquire whether the appellants have any such interest in the subject-matter as will enable them to maintain this action. The devise has but one condition precedent to a vesting of the gift in the college, and that is that "Lenox College shall [within the time prescribed] raise $25,000 to equip said Archibald Livingston Home and to be added to the gift herein given." When that condition was met, as we hold it was, the estate so devised vested at once in Lenox College. The will neither provides nor attaches to such devise any condition subsequent, upon failure of which the college may be divested of the estate, in favor of the heirs of the testator. The devise over to the heirs was made contingent upon the failure of the college to perform the condition precedent,—the raising of additional aid to the amount of $25,000; and when that condition was performed, the possibility that the devise over would ever be effective was extinguished. It did not, of course, relieve the college of its legal and moral obligation to apply the estate so received to its intended purpose. If it shall fail in this duty, it is not answerable for such failure to the appellants, whose only possible interest in the Livingston estate was eliminated by its vesting in the college. The wrong, if one is done, is to the educational charity to the use of which the testator dedicated it, and the law is not without an appropriate remedy for its protection, if needed.

It is to be said in this connection that, while Archibald

Livingston has been dead for twelve years or more, and his devise in favor of the college vested some nine years since, the appellants have managed to make the rights of the college in the premises the subject of constant litigation; so that, practically speaking, there has never been a time when the college could, with safety or propriety, proceed to utilize the gift made by Livingston; and even if the question were one which we could properly investigate in this proceeding, we should be compelled to say that the delay in making the intended use of such gift has not been unreasonable.

This conclusion renders unnecessary specific reference to other questions which have had more or less discussion in argument. Since what counsel designate as the ''decisive issue in the case,'' the question whether the required sum was ''raised,'' within the meaning of that phrase in the will, has been decided against the appellants' contention, little more is left to be considered. The issues generally seem to have been carefully and fairly tried, and we are persuaded that they were correctly determined by the trial court. The decree appealed from is—
*Affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.